UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RON STUART MARTIN** | : | **DOCKET NO. 14-cv-3358** |
| **D.O.C. # 301808** | | |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| **JERRY W. GOODWIN** | : | **MAGISTRATE JUDGE KAY** |

REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Ron Stuart Martin ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Avoyelles Correctional Center. Jerry W. Goodwin ("respondent"), warden, has responded [doc. 10].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

I.
BACKGROUND

*A. Conviction*

The petitioner was indicted on January 30, 2007, in the 30th Judicial District, Vernon Parish, Louisiana, on a charge of second degree murder. Doc. 10, att. 1, pp. 53–54. The charge

related to the November 25, 2006, fatal injury[1] of his ten week old daughter, Gladys Martin. *Id.* at 53. Gladys' death was caused by blunt force trauma to her head while she was in the care of the petitioner. Doc. 10, att. 4, p. 96; Doc. 10, att. 3, p. 205. At the conclusion of a bench trial in that district he was convicted of manslaughter. Doc. 10, att. 3, p. 165.

## B. Direct Appeal

The petitioner then appealed his conviction, raising several assignments of error pro se and through counsel. *State v. Martin*, 66 So.3d 608 (2011). Relevant to this proceeding, he urged that the verdict was based on insufficient evidence. *Id.* at 612–13. The Third Circuit Court of Appeal reviewed this allegation and found it to be without merit. *Id.* at 616. It also found no merit to the other assignments of error or alternatively deemed them waived for failure to brief, and therefore affirmed the petitioner's conviction. *Id.* at 616–19.

The petitioner then sought review at the Louisiana Supreme Court, which review was denied on December 16, 2011. *State v. Martin*, 76 So.3d 1201 (La. 2011). It does not appear that he filed a petition for certiorari in the United States Supreme Court. Doc. 1, p. 9.

## C. State Collateral Review

On September 19, 2012, the petitioner filed a pro se application for post-conviction relief with the trial court. Doc. 1, att. 2, p. 30. He asserted prosecutorial misconduct at trial, a denial of his right to effective assistance of counsel, and other constitutional claims. Doc. 1, att. 3, pp. 1–8. The trial court denied the application for failure to state grounds thereto. *Id.* at 9 (citing LA. C. CR. P. art 930.3). The petitioner then sought review at the Third Circuit, which found no error to the trial court's ruling. *Id.* at 26. His application to the Louisiana Supreme Court for supervisory and/or remedial writs was denied on October 31, 2014. *Id.* at 38.

---

[1] The coroner's report reveals that Gladys died from this injury on November 29, 2006, after being treated at Beauregard Memorial Hospital and LSU Medical Center in Shreveport, Louisiana. Doc. 10, att. 1, pp. 130–33.

The respondent filed another application for post-conviction relief in the trial court on October 12, 2015, asserting that his waiver of jury trial was neither knowing nor voluntary. *See* Doc. 14, att. 1, pp. 35–37. The trial court summarily denied this petition on October 20, 2015, citing the trial record to show that the petitioner had made a valid waiver. *Id.* at 25–27. There is no evidence that the petitioner raised this claim in the Third Circuit or Louisiana Supreme Court.

### D.  *Federal Habeas Petition*

The instant petition was filed on December 2, 2014.[2] Doc. 1, p. 14. As grounds for relief the petitioner asserts:

1. The evidence was insufficient to support the conviction.
2. The conviction was obtained in violation of the petitioner's constitutional rights because his waiver of a jury trial was not knowing or intelligent.
3. The prosecution was malicious and/or vindictive.
4. The trial court failed to rule or ruled incorrectly on a Motion for Change of Venue.
5. The petitioner received ineffective assistance of counsel at trial.
6. The trial court violated the rule established in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786 (1993).[3]

Doc. 1, pp. 2–8.

---

[2] Under Louisiana law a pleading by a pro se inmate is considered filed, and so its timeliness is calculated from, the date the inmate delivers the papers to prison authorities for submission. *Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009). Here the petitioner signed his pleading on November 24, 2014. Doc. 1, p. 14. However, there is no indication of when the document was delivered to prison authorities. Therefore, in light of the fact that the eight day difference does not impact the timeliness of the petition, this court will use December 2 as the date of filing.

[3] In *Daubert* the Supreme Court established standards for the admissibility of expert testimony. 113 S.Ct. at 2796. The petitioner's briefing of this claim references no expert testimony and instead focuses on the fact that there was no hearing on certain evidence (namely photographs and references to prior and simultaneous offenses committed by the petitioner), to which the petitioner claims he was tricked into stipulating. Doc. 1, p. 8. The petitioner did raise assignments of error relating to admissibility of evidence in his direct appeal. Doc. 1, att. 1, pp. 24–31; *Martin*, 66 So.3d at 618–19. However, none of those match the factual and legal bases for his claim here.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[4] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

## C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[4] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

# III.
## LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

Here the petitioner's conviction became final ninety days after the judgment of the Louisiana Supreme Court on December 16, 2011, when his time for seeking review by the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing this petition began to run on March 15, 2012. However, it was tolled by the filing of his application for post-conviction relief on September 19, 2012, after **188 days** had run.

The limitations period was untolled with the ruling of the Louisiana Supreme Court on October 31, 2014, causing an additional **32 days** to accrue before the instant petition was filed on December 2, 2014. Accordingly, only **220 days** are counted against the one year limit, making this petition timely.

### B. *Exhaustion of State Court Remedies and Procedural Default*

The respondent asserts that all claims except the first one are subject to procedural default. Doc. 11, pp. 13–17. He first alleges that the fourth and sixth claims were not exhausted in state court and cannot be raised now. We agree with respect to both claims, as we can locate no evidence

that they were raised in state court proceedings.[5] Therefore they are subject to technical procedural default.

The respondent also notes that claims three and five were dismissed on procedural grounds, based on the trial court's ruling that he had "[f]ailed to state a ground therefore under [La.] C. Cr. P. art. 930.3" and the Third Circuit's affirmation of the same. Doc. 1, att. 3, pp. 9, 26. Article 930.3 sets out the exclusive grounds for which an application for post-conviction relief may be granted under Louisiana law. There is no challenge to the adequacy and independence of this article as a procedural rule and it has been upheld as such within this circuit. *See, e.g.*, *Ardis v. Cain*, 1999 WL 997497, \*4 (W.D. La. Oct. 29, 1999). *See also Brumfield v. Cain*, 2008 WL 2600140, \*6 (M.D. La. Jun. 30, 2008); *Hull v. Stalder*, 2000 WL 1598016, \*1 (5th Cir. 2000) (unpublished). Accordingly, these claims are subject to traditional procedural default.

Finally, the respondent contends that the second claim is unexhausted and subject to procedural default "because the state court disposed of [it] summarily in a state court application for post-conviction relief." Doc. 11, p. 15. We disagree as the ruling clearly addresses the merits of the claim albeit in summary fashion. Doc. 14, att. 1, pp. 25–27. However, there is no evidence that the petitioner sought review at the Third Circuit and the Louisiana Supreme Court.[6] Therefore the claim is unexhausted and subject to technical procedural default on the grounds cited above.

A procedural default may still be avoided, however, if the petitioner can show cause and resulting prejudice for his default or demonstrate that the federal court's failure to review the

---

[5] Post-conviction relief is now time-barred under La. C. Cr. P. art. 930.8, which provides a two year window for filing from the date that the conviction became final. The petitioner's conviction became final when his time for seeking review in the U.S. Supreme Court expired on March 15, 2012, as explained *supra*, and so his last day for filing for post-conviction relief was March 15, 2014.

[6] We also note that the claim was raised with the trial court after the instant petition was filed. "[A] federal court can give relief, even though the state remedies had not been exhausted when the habeas corpus petition was filed, if they are exhausted by the time that the federal court acts." *Bufalino v. Reno*, 613 F.2d 568, 571 (5th Cir. 1980). Therefore we would consider the claim exhausted if proof of such had been submitted as of the time of this ruling, but there is still no evidence thereof.

defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). To establish cause, the petitioner must show that some external, objective factor impeded his efforts to raise the claim in a procedurally proper manner. A finding of fundamental miscarriage of justice, on the other hand, depends on a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986). The factual innocence standard means that the petitioner must show a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997).

For cause and prejudice the petitioner offers only his own ignorance of the law. *See* Doc. 1, att. 1, p. 2; Doc. 12, pp. 2–3. Habeas courts do not accept a petitioner's pro se status or ignorance as a basis for cause.[7] Accordingly, the petitioner's assertion of his prior ignorance of the legal basis for these claims, based on his own lack of legal education, cannot excuse the procedural default.

The petitioner also makes a general assertion of his innocence in an attempt to excuse any defaults. Doc. 1, att. 1, p. 2. However, this does not rise to the standard articulated above, especially given the petitioner's failure to cite any new evidence. Therefore the procedural defaults stand for claims 2 through 6.

C. *Substantive Analysis*

Having determined that only the first claim is timely, exhausted, and not subject to procedural default, we now consider each one under the standards of review described above.

The petitioner alleges that the evidence presented at trial was insufficient to support his conviction. A defendant's constitutional right to due process is violated when he is convicted of a

---

[7] *See, e.g.*, *Saahir v. Collins*, 956 F.2d 115, 118–19 (5th Cir. 1992) (denying pro se status as a basis for cause); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (below average intelligence); *McCoy v. Newsome*, 953 F.2d 1252, 1257–58 (11th Cir. 1992) (lack of legal education).

crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

The petitioner was convicted of manslaughter, which is defined in relevant part under Louisiana law as:

> A homicide committed, without any intent to cause death or great bodily harm . . . [w]hen the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 [first degree murder] or 30.1 [second degree murder], or in any intentional misdemeanor affecting the person.

LA. REV. STAT. § 14:31(A)(2)(a).[8]

Petitioner claims that the evidence was insufficient to prove that the head injury sustained by Gladys was caused by his intentional conduct rather than an accidental drop into the bathtub as he claimed at trial. Doc. 1, p. 3. He points to an expert witness's testimony that a fall could have caused the infant's injury if her head had hit a corner of her bath chair. *Id.* The respondent maintains that there was sufficient evidence to sustain the conviction based on the Third Circuit's determination that the expert testimony and the circumstantial evidence, viewed in a light most favorable to the state, ruled out accidental causes of death. Doc. 11, pp. 19–21.

---

[8] The trial court cited this particular type of manslaughter and closing arguments revealed that the underlying felony was cruelty to a juvenile. Doc. 10, att. 3, p. 165; Doc. 10, att. 4, p. 206. Even though that felony is one of the enumerated offenses for second degree murder (the offense with which the petitioner was charged), it could still support a conviction of manslaughter as a responsive verdict. *Martin*, 66 So.3d at 615 (citing LA. C. CR. P. art. 814).

The Third Circuit engaged in an exhaustive review of the evidence presented at trial in order to determine if there was sufficient evidence to support the conviction. It gave particular attention to the testimony of the expert the petitioner cites, Dr. James Traylor.

Traylor performed the autopsy on Gladys and was accepted by the trial court as an expert in forensic pathology. Doc. 10, att. 4, p. 84. He acknowledged that there was a point on Gladys' bath chair that had the right dimensions to have caused her skull fracture. *Id.* at 122–24. However, he stated that, based on medical testing, there was only a one percent chance that Gladys suffered from osteogenesis imperfecta and was therefore more susceptible to fracture. *Id.* at 136–37. He also expressed heavy skepticism that a fall from the height suggested would have resulted in enough force to cause the fracture. *Id.* at 172–73. Accordingly, he maintained that Gladys' death was a homicide rather than an accident. *Id.* at 111, 173.

The state also introduced circumstantial evidence of the petitioner's guilt. Most notably, Detective Rhonda Hester introduced a recording of her interview with the petitioner from November 28, 2006. Doc. 10, att. 4, p. 3; *see* Doc. 10, att. 3, pp. 232–35 (describing interview circumstances). The transcript of the interview was also received into evidence and included in the state court record. Doc. 10, att. 4, pp. 1–2. It reveals that the petitioner complained of Gladys' fussiness, describing it as "extreme," and stated that they "[had] been through hell with this baby." Doc. 10, att. 1, pp. 98, 101. He also attributed Gladys' injury to a bath she received from her mother, Sheila Newhouse ("Newhouse"). *Id.* at 103.

Hester then described a second interview with the petitioner, conducted after Gladys' death and autopsy on December 1, 2006. Doc. 10, att. 4, p. 8. Another detective, Ronald Wiggins ("Wiggins"), testified based on his notes and recollection of the December this interview.[9] *Id.* at

---

[9] Hester stated that this interview was not recorded because the tape recorder was not working. *Id.* at 9. Accordingly, Wiggins took notes while she conducted the interview. Doc. 10, att. 4, pp. 9–10.

12. Wiggins stated that, while the petitioner began by reiterating his story that Newhouse had dropped Gladys in the bathtub, he eventually changed it and admitted that he had been the one to bathe Gladys while Newhouse was running errands. *Id.* at 18–19. The petitioner claimed that he and Newhouse had concocted their story to keep him out of trouble while on parole. *Id.* at 19. He also admitted drinking a six-pack of beer that day. *Id.* at 20.

Viewed in a light most favorable to the state, this evidence is enough to support the conviction. By the petitioner's admission, Gladys was in his sole care at the time of the fatal injury. Although the petitioner's intoxication could support his claim that he accidentally dropped Gladys, it also supports the state's argument that his intolerance for her fussing led him to deliberately inflict the fatal injury. Although Traylor admitted that the bath seat had the proper dimensions to inflict a skull fracture with the right kind of contact, he was adamant that the fall described by the petitioner could not account for Gladys' injury and that her cause of death was homicide rather than accident. Accordingly, there is no error to the Third Circuit's ruling: the petitioner has presented no grounds for overturning the trial court's findings. This claim thus offers no basis for federal habeas relief.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

      Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

      THUS DONE this 26th day of April, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE